■ In the Matter of CHARLES M. SHAPIRO, Petitioner, v. BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.— AULISI, J. Proceeding under CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by an order of the Supreme Court at Special Term, entered in Albany County) to review a final determination of the Board of Regents of the University of the State of New York which suspended the license of the petitioner, a professional engineer, for six months. In 1959, petitioner was retained to test the mechanical ventilating system in a newly constructed apartment building for compliance with applicable building department rules. The building consisted of six floors over a basement and mechanical ventilation was required in spaces on all floors and in the basement. The ventilation plan furnished by the architect to the petitioner's sons, who were associated with him and who conducted the tests on his behalf and in his name, did not show the basement nor indicate that it contained spaces requiring ventilation. Following the tests, which were not carried out in the basement spaces, the petitioner certified that applicable ventilation requirements had been satisfied. These certificates, dated January 29, 1960, and March 29, 1960, were erroneous since vertical ventilation shafts erected to serve the basement were bisected at the first floor level by a concrete slab which rendered the basement ventilation system inoperative. In addition, certain defects in the entire system above the slab were not discovered and reported. Defects in the operation of the ventilation system caused the owner in 1961 to have the premises inspected by a

licensed engineer and certain repair work was done thereon by a licensed plumber. Charges were preferred against petitioner and a subcommittee of the State Board of Professional Engineers found petitioner guilty under two of the specifications charged: (1) gross negligence, incompetence and misconduct in the practice of professional engineering (Education Law, § 7210, subd. 1, par. g), and (2) unprofessional conduct (Education Law, § 7210, subd. 1, par. i), supplemented by subdivision 2 of section 77 of the Regulations of Commissioner of Education, "failure to exercise due regard for the safety of life or health of the public or any employee who may be affected by professional work for which he is responsible". (8 NYCRR 68.1 [b] [2].) Petitioner argues that the board erred in applying a later set of rules of the Department of Buildings of the City of New York which he contends are more stringent. It is evident that the purpose of both sets of rules is to require that the qualified person conducting the tests inspect the entire ventilating system before certifying its adequacy. Admittedly, this was not done by petitioner. It is, therefore, in our opinion, immaterial which set of rules are considered applicable. Petitioner attacks the board's findings under both specifications on the ground that substantial evidence is lacking to support them. The board found that there were numerous defects above the concrete slab which interfered with the proper operation of the ventilating system at the time it was tested. There is testimony by the above-mentioned engineer and plumber that their subsequent inspections revealed shafts, ducts and registers which functioned deficiently because of dirt and debris. There were also areas that had no registers at all, where a duct behind a register was not even connected to a shaft and ducts terminated in cabinets which had been built over the passage openings. It was the opinion of these experts that these conditions and defects existed at the time of the initial inspection. Assuming, *arguendo*, that the findings concerning defects above the slab were not justified, there is substantial evidence to support the determination of gross negligence, incompetency and misconduct, and unprofessional conduct on the part of petitioner in connection with his actions relative to the basement. Petitioner himself visited the premises in 1959 to "Just superficially look; that's all." Concerning the architecural plan, petitioner looked at it, stating, "I may have scanned it, but superficially." He relied entirely upon the judgment of his two sons, one of whom was still in training, while the other had been licensed only since May 18, 1959. Furthermore, this was the first large, multiple dwelling building ever tested by the petitioner or his inexperienced sons. The plan obtained from the architect showed that it was only sheet 7 of 12 pages. No inquiry was made concerning the basement area, notwithstanding the fact that the plan was otherwise ambiguous as to whether the ventilating system extended to the basement as both petitioner and his son testified. Finally, the record shows that petitioner found out in 1961 that his earlier certifications were in error and that serious defects existed in the system. He nevertheless refrained from making a disclosure of this to the appropriate city officials. We have reviewed petitioner's other allegations of errors concerning procedural unfairness and unconstitutionality and find them to be without merit upon the instant record (see *Matter of Popper* v. *Board of Regents*, 26 A D 2d 871). Likewise, the question of punishment and its mitigation is primarily for the Board of Regents and we find no reason to disturb its action (*Matter of Scire* v. *Board of Regents*, 23 A D 2d 943). Determination confirmed, and petition dismissed, without costs. Gibson, P. J., Herlihy, Reynolds, Aulisi and Staley, Jr., JJ., concur in memorandum by Aulisi, J.